```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| | ‖ | |
| Plaintiff, | ‖ | |
| | ‖ | |
| vs. | ‖ | Cv. No. 03-2550-B/V |
| | ‖ | Cr. No. 93-20121-Tu |
| JAMES RONALD PULLIAM, | ‖ | |
| | ‖ | |
| Defendant. | ‖ | |
| | ‖ | |

ORDER GRANTING MOTION FOR EXTENSION OF TIME
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Defendant James Ronald Pulliam, Bureau of Prisons inmate registration number 04635-003, an inmate at the United States Penitentiary in Atlanta, Georgia, filed a pro se motion pursuant to 28 U.S.C. § 2255 on July 25, 2003, along with a supporting memorandum. The Court issued an order on October 23, 2003 directing the Government to respond to one claim asserted in the motion. The Government filed its response on December 9, 2003. Thereafter, on September 30, 2004, Pulliam filed a document, entitled "Request to Supplement, Under Rule 15 Federal Rules of Criminal Procedure A Memorandum of Suuport [sic] § 2255 Petition," which set forth additional evidence and argument in support of his motion. On March

4, 2005, Pulliam filed an inquiry about the status of his motion.[1]
Finally, on June 27, 2005, the Clerk docketed a motion by Pulliam
asking that the docket be amended to reflect the fact that two of
his prior convictions had been vacated. The Court issued an order
on July 13, 2005 directing Pulliam, within thirty days, to file a
supplemental memorandum addressing his due diligence in seeking the
vacation of his Georgia convictions in light of <u>Johnson v. United
States</u>, 544 U.S. 295 (2005). Pulliam filed his supplemental
memorandum on August 18, 2005.[2]

On May 25, 1993, a federal grand jury returned a four-
count indictment against Pulliam arising out of an armed bank
robbery he committed in Memphis on March 12, 1993. The first count
charged Pulliam with armed bank robbery of approximately $68,546,
in violation of 18 U.S.C. §§ 2113(a) & (d). The second count
concerned his carrying and using a firearm during a crime of
violence, in violation of 18 U.S.C. § 924(c). The third count
accused him of being a convicted felon in possession of a firearm,
in violation of 18 U.S.C. § 922(g) and the fourth count charged him
with escape, in violation of 18 U.S.C. § 751.

Pulliam entered a guilty plea to the first three counts
of the indictment, while the fourth count was dismissed pursuant to

---

[1]     The docket sheet incorrectly describes this submission as another
motion to amend or supplement the original § 2255 motion.

[2]     On July 29, 2005, the Clerk docketed a motion by Pulliam seeking a
15-day extension of time to respond to the July 13, 2005 order. For good cause
shown, that motion is GRANTED.

2

a plea agreement. On February 3, 1994, District Judge Jerome Turner sentenced Pulliam as an armed career criminal to concurrent terms of two hundred twenty (220) months on counts 1 and 3 and a consecutive term of sixty (60) months on count 2, for a total of two hundred eighty (280) months imprisonment,[3] to be followed by a five-year period of supervised release. The Defendant was also ordered to pay restitution in the amount of $62,531. Judgment was entered on March 3, 1994. The United States Court of Appeals for the Sixth Circuit affirmed. United States v. Pulliam, No. 94-5467, 1995 WL 6215 (6th Cir. Jan. 5, 1995) (per curiam).

In his original § 2255 motion, Pulliam raises the following issues:

1.  His conviction was obtained by a plea of guilty which was not made voluntarily with an understanding of the nature of the charge and the consequences of the plea;

2.  His conviction was obtained by a violation of the protection against double jeopardy; and

---

[3]  Pursuant to § 3D1.2 of the United States Sentencing Guidelines ("U.S.S.G."), counts one and three were grouped for sentencing purposes. Pursuant to U.S.S.G. § 3D1.3(a), the highest offense level applicable to the group was used to determine the offense level for the group. In this case, in accordance with U.S.S.G. § 4B1.4, Pulliam was designated an armed career offender due to his conviction on count three, felon in possession of a firearm. In so holding, the sentencing court determined that the prisoner had three prior convictions for violent felonies, 18 U.S.C. §§ 924(e)(1) & (2)(B), specifically, a 1960 conviction for robbery, a 1971 conviction for criminal attempt to commit burglary, and a 1987 conviction for aggravated assault, all of which were obtained in the State of Georgia. Accordingly, the base offense level was deemed to be 34, pursuant to U.S.S.G. § 4B1.4(b)(3)(A). Under the plea agreement, Pulliam was awarded a three-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, despite his escape attempt while the criminal charges were pending, see 02/03/94 Tr. at 10, 11-20, resulting in a total offense level of 31. Pulliam's criminal history category was deemed to be VI, according to § 4B1.4(c)(1) & (2). The guidelines provided a sentencing range of 188-235 months on those counts.

3.   His sentence as an armed career criminal was based on three prior convictions, one of which has since been overturned.

In the supplement to his motion that was filed on September 30, 2004, Pulliam asserted that another of his previous state convictions had been vacated.

As a preliminary matter, the first two issues raised in Pulliam's original motion are plainly time barred. Paragraph 6 of 28 U.S.C. § 2255 provides:

A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—

(1)   the date on which the judgment of conviction becomes final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

"[F]or purposes of collateral attack, a conviction becomes final at the conclusion of direct review." Johnson v. United States, 246 F.3d 655, 657 (6th Cir. 2001). The Supreme Court held that, for purposes of postconviction relief, "[f]inality attaches when this Court affirms a conviction on the merits on

4

direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003).

In this case, the Sixth Circuit's decision on direct appeal was issued on January 5, 1995, and the time for filing a petition for a writ of certiorari expired ninety days later, on April 5, 1995. Because Pulliam's conviction became final prior to the enactment of the AEDPA, he had a one-year grace period, until April 24, 1997, to file a timely § 2255 motion. <u>Towns v. United States</u>, 190 F.3d 468, 469 (6th Cir. 1999). Pulliam's original petition was signed on July 7, 2003 and, even if it were deemed to have been filed on that date, <u>Houston v. Lack</u>, 487 U.S. 266 (1988); <u>Miller v. Collins</u>, 305 F.3d 491,497-98 & n. 8 (6th Cir. 2002); <u>Towns v. United States</u>, 190 F.3d 468, 469 (6th Cir. 1999) (§ 2255 motion), more than six years had elapsed since the expiration of the limitations period. The first two issues are, therefore, clearly time barred.[4]

It is also necessary to consider whether the limitations period is subject to equitable tolling in this case. In <u>Dunlap v. United States</u>, 250 F.3d 1001, 1004 (6th Cir. 2001), the Sixth Circuit held that the one-year limitations period applicable to § 2255 motions is a statute of limitations subject to equitable

---

[4]     Section 2244(d)(1) provides that the limitations period begins to run from the <u>latest</u> of the four specified circumstances. Pulliam presents no argument that the limitations period for the first two claims commenced running any time later than April 24, 1996.

tolling.   Five   factors   are   relevant   to   determining   the appropriateness of equitably tolling a statute of limitations:

> (1)  the  petitioner's  lack  of  notice  of  the  filing requirement; (2) the petitioner's lack of constructive notice  of  the  filing  requirement;  (3)  diligence  in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant  of  the  legal  requirement  for  filing his claim.

Id. at 1008.[5]

The   Sixth   Circuit   has   stated   that   "equitable   tolling relief  should  be  granted  only  sparingly."  Amini,  259  F.3d  at  500; see also  Vroman  v.  Brigano,  346  F.3d  598,  604  (6th  Cir.  2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

> Typically,   equitable   tolling   applies   only   when   a litigant's  failure  to  meet  a  legally-mandated  deadline unavoidably   arose   from   circumstances   beyond   that litigant's  control.  .  .  .  Absent  compelling  equitable considerations, a court should not extend limitations by even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560– 61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793,  795  (6th  Cir.  Mar.  27,  2003);  Johnson  v.  U.S.  Postal  Serv., No.  86-2189,  1988  WL  122962  (6th  Cir.  Nov.  16,  1988)  (refusing  to apply equitable tolling when pro se litigant missed filing deadline by one day). Thus, ignorance of the law by pro se litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx.

---

[5]      This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases.  Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

110, 112 (6th Cir. Oct. 23, 2003); <u>Harrison v. I.M.S.</u>, 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); <u>Miller v. Cason</u>, 49 Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); <u>Brown v. United States</u>, 20 Fed. Appx. 373, 374 (6th Cir. Sept. 21, 2001) ("Ignorance of the limitations period does not toll the limitations period."); <u>cf.</u> <u>Jurado</u>, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[6]

In this case, the Defendant has provided no explanation for his failure to raise the first two issues on direct appeal or in a timely § 2255 motion. Instead, Pulliam apparently assumed that the one-year statute of limitations with respect to his third issue would commence running when he succeeded in overturning his first Georgia conviction, and he further assumed that he could piggyback any additional issues into his § 2255 motion. Pulliam is mistaken. The relevant portion of ¶ 6(4), which Pulliam invokes in support of the timeliness of the third issue, plainly is limited to "the claim or claims" arising out of the newly discovered operative facts, not

---

[6]   <u>See also</u> <u>Cobas v. Burgess</u>, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . . , and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

other claims that could have been asserted at an earlier time.[7]
Moreover, for the reasons previously stated, Pulliam's apparent
misconception about his ability to raise these claims in a timely
motion does not justify equitable tolling. Accordingly, claims 1
and 2 are untimely, and they are DISMISSED.

With respect to his third issue, as previously noted, see
supra p. 3 n.3, Pulliam was sentenced as an armed career criminal
on the basis of three prior felony convictions that were obtained
in the State of Georgia. At the sentencing hearing in this case,
which was held in 1994, the Defendant presented his objections to
the Court's consideration of those convictions, and his arguments
were rejected on the merits. Subsequently, on January 3, 2001,
Pulliam filed a pro se petition for a writ of habeas corpus in the
Superior Court of Fulton County, Georgia challenging the 1960
conviction for robbery on the ground that the State could not
demonstrate that he knowingly waived his rights in accordance with
Boykin v. Alabama, 395 U.S. 238 (1969). Because most of the records
concerning that conviction were no longer in existence, the State
was unable to satisfy its burden of demonstrating that Pulliam's
guilty plea was knowing and voluntary and, therefore, the court
issued an order on August 29, 2002 granting the writ of habeas

---

[7]     The correct procedure would have been for Pulliam to file a § 2255
motion raising the first two issues before the expiration of the limitations
period on April 24, 1997 and then, once the first of his qualifying convictions
was invalidated, to seek leave to file a second or successive § 2255 motion
raising the third issue.

corpus with respect to the 1960 conviction.[8] Pulliam's original §
2255 motion, which was filed on July 25, 2003, raised a challenge
to his designation as an armed career criminal because of the
invalidation of the 1960 conviction.

Although the inmate's state habeas petition also
challenged the 1971 De Kalb County conviction for criminal attempt
to commit burglary, the Fulton County Superior Court denied relief
on that conviction because "[t]he record contains certified copies
of waivers as well as the Judge's attestation that the Petitioner
was given his rights and voluntarily and intelligently waived
them." Pulliam appealed and, on September 13, 2004, the Georgia
Supreme Court reversed the denial of habeas corpus relief with
respect to the 1971 conviction because the documents at issue did
not indicate that Pulliam was advised of, and waived, his rights
against compulsory self-incrimination, to a trial by jury, and to
confront his accusers. Pulliam brought this decision to the Court's
attention in his September 30, 2004 filing.

The Armed Career Criminal Act, 18 U.S.C. § 924(e),
provides enhanced sentencing for individuals who violate 18 U.S.C.
§ 922(g) and who also have three previous convictions for a violent
felony or a serious drug offense. The three Georgia felony
convictions were violent felonies within the meaning of 18 U.S.C.

---

[8]     Copies of that order are attached to the memorandum in support of
this § 2255 motion, which was filed on July 25, 2003, and as Exhibit 3 to the
Government's response to the motion, which was filed on December 9, 2003.

§ 924(e)(2)(B). Because Pulliam had the minimum three qualifying felony convictions, the invalidation of his 1960 burglary conviction, if credited, meant that he no longer qualified to be sentenced as an armed career criminal under § 924(e).[9]

The Government has taken the position that the third issue is time barred. Response to Defendant's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, filed Dec. 9, 2003 ("G. Br."), at 4-7. Pulliam asserts that, pursuant to ¶ 6(4) of § 2255, the limitations period in this case began running on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," which, in this case, was August 29, 2002, the date on which the Fulton County Superior Court granted the writ of habeas corpus vacating the 1960 conviction for robbery. Petitioners [sic] initial memorandum in support of 2255 petition, filed July 25, 2003, at 1.

This issue was resolved in <u>Johnson v. United States</u>, 544 U.S. 295, 298 (2005), which held that "the [one-year limitations] period begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, after entry of judgment in the

---

[9]     As a practical matter, the subsequent invalidation of the 1971 conviction for criminal attempt to convict burglary adds little to this analysis because, if the invalidation of the 1960 conviction were credited, there is apparently no dispute that Pulliam no longer qualifies as an armed career criminal. Of course, in the event Pulliam were to receive a new sentencing hearing, he presumably would not be assessed criminal history points for convictions that were invalidated.

federal case with the enhanced sentence." The Supreme Court continued:

> That leaves us with the question of how to implement the statutory mandate that a petitioner act with due diligence in discovering the crucial fact of the vacatur order that he himself seeks. The answer is that diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence.

Id. at 308. Thus,

> settling on the date of judgment as the moment to activate due diligence seems best to reflect the statutory text and its underlying concerns. After the entry of judgment, the subject of the § 2255 claim has come into being, the significance of inaction is clear, and very little litigation would be wasted, since most challenged federal convictions are in fact sustained [on direct appeal].

Id. at 309. Accordingly, the running of the one-year limitations period began on or about August 29, 2002 if, and only if, Pulliam exercised due diligence in seeking the vacation of his Georgia convictions after the entry of his criminal judgment on March 3, 1994. See id. at 310.[10]

In this case, although all the records pertaining to his previous convictions were available to him at the time of his sentencing, and although he attempted to challenge the validity of his predicate convictions at his federal sentencing hearing,

---

[10]    The Supreme Court emphasized, in a footnote, that "[o]nce a petitioner diligently has initiated state-court proceedings, any delay in those proceedings that is not attributable to the petitioner will not impair the availability of the paragraph four limitation rule, once those proceedings finally conclude." Id. at n.8.

Pulliam waited almost seven years after the entry of judgment before filing his petition for a writ of habeas corpus with the Fulton County Superior Court on January 3, 2001. Although the Court directed Pulliam to submit a supplemental brief addressing the reason for this delay, his August 18, 2005 filing does not directly answer the question but, instead, focuses on his due diligence in obtaining a ruling from the Georgia court once his state habeas petition was filed in 2001 and on his diligence in filing the instant § 2255 motion once the Georgia court invalidated the conviction. <u>See</u> Response to Court's Order of Supplemental Memoranda on the Issue of Due Diligence, filed Aug. 18, 2005 ("D. 08/18/05 Br."), at 7-10. The Defendant also mentions the length of time that transpired from his arrest on the instant federal charge to the decision of the Sixth Circuit on direct appeal and the length of time his state habeas petition was pending in Georgia. <u>Id.</u> at 10. All these matters have no bearing on the Defendant's diligence in filing his Georgia habeas petition. The only reference in the Defendant's eleven-page supplemental brief to the only issue of concern is the following paragraph:

> I would like (I need to) add much more to this on <u>Johnson v. United States</u>, but it is August 12, 2005. Day 30 on the alloted [sic] time you gave me. I have not received a reply to my request for fifteen (15) days; therefore, I must place my memoranda into the legal mail today.

D. 08/18/05 Br. at 10. The Defendant also mentions, generally, that mail delivery is sometimes delayed, <u>id.</u> at 4, it sometimes takes

two weeks or more to have a paper notarized, id. at 5, and inmates

are sometimes on lockdown, id.

In Johnson, the Supreme Court held that the defendant,

who had not filed his challenge to his predicate state conviction

until three years after the entry of his federal judgment, acted

unreasonably:

> Although Johnson knew that his conviction subjected
> him to the career offender enhancement, he failed to
> attack the predicate for enhancement by filing his state
> habeas petition until February 1998, more than three
> years after entry of judgment in the federal case.
> Indeed, even if we moved the burden of diligence ahead to
> the date of finality of the federal conviction or to
> AEDPA's effective date two days later, Johnson would
> still have delayed unreasonably, having waited over 21
> months.
>
> Johnson has offered no explanation for this delay,
> beyond observing that he was acting pro se and lacked the
> sophistication to understand the procedures. But we have
> never accepted pro se representation alone or procedural
> ignorance as an excuse for prolonged inattention when a
> statute's clear policy calls for promptness, and on this
> record we think Johnson fell far short of reasonable
> diligence in challenging the state conviction. Since
> there is every reason to believe that prompt action would
> have produced a state vacatur order well over a year
> before he filed his § 2255 petition, the fourth paragraph
> of the § 2255 is unavailable, and Johnson does not
> suggest that his motion was timely under any other
> provision.

544 U.S. at 311.

Likewise, in this case, Pulliam's criminal judgment was

entered on March 3, 1994 and the Sixth Circuit affirmed his

conviction on direct appeal on January 5, 1995. He offers no

explanation for the seven-year delay from the date of entry of

13

judgment, or of the six-year delay from the decision on direct appeal, other than to cite factors that would be equally applicable to virtually every federal prisoner.[11] Accordingly, the Court HOLDS the Pulliam did not exercise due diligence in seeking to vacate his Georgia convictions and, therefore, this issue is time barred.

Pulliam's conviction and sentence are valid, and his § 2255 motion is DENIED.

Consideration must also be given to issues that may occur if the Defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

---

[11]     The Court has considered whether, in light of his complaints about the time afforded, Pulliam should be given additional time to submit a responsive brief. The Court declines to do so in this case. Although the July 13, 2005 order asked for a brief addressing one narrow issue, Pulliam apparently had time to draft an 11-page document addressing issues raised by the Government in previous filings as well as other issues "the might be made by the Government." D. 08/18/05 Br. at 1. In the time since the filing of his supplemental brief, Pulliam did not seek leave to file any further response, and he did not file anything further. This Defendant has not previously shown any reluctance to file any information he believes to be relevant to this matter. Under these circumstances, there is no reason to believe that, if only he had more time, Pulliam had anything of substance to add.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342
(cautioning courts against conflating their analysis of the merits
with the decision of whether to issue a COA; "The question is the
debatability of the underlying constitutional claim, not the
resolution of that debate.").[12]

    In this case, the Defendant's claims are clearly time
barred and, therefore, he cannot present a question of some
substance about which reasonable jurists could differ. The Court
therefore DENIES a certificate of appealability.

    The Sixth Circuit has held that the Prison Litigation
Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to
appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117
F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis
in a § 2255 case, and thereby avoid the appellate filing fee
required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain
pauper status pursuant to Federal Rule of Appellate Procedure
24(a). Kincade, 117 F.3d at 952.[13] Rule 24(a) provides that a party
seeking pauper status on appeal must first file a motion in the
district court, along with a supporting affidavit. Fed. R. App. P.
24(a)(1). However, Rule 24(a) also provides that if the district

_____

    [12]    By the same token, the Supreme Court also emphasized that "[o]ur
holding should not be misconstrued as directing that a COA always must issue."
Id. at 337. Instead, the COA requirement implements a system of "differential
treatment of those appeals deserving of attention from those that plainly do
not." Id.

    [13]    Effective April 9, 2006, the appellate filing fee increased from $255
to $455.

court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if movant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 13th day of September, 2006.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE